27  507
76  299
76  534
27  507
86  241

## PHILIP K. SMITH v. ADELAIDE BOQUET.

The presumption in favor of the community resulting from a deed made to either the husband or the wife may, as between themselves and those claiming under them with notice, be rebutted by proof that the purchase was made with the separate funds of either party.

A husband may make a gift or grant of the community, or of his separate property, to his wife, by a conveyance directly to her without the intervention of trustees.

If the husband purchase with his separate funds, or with those of the community, and take the title in the name of the wife; the presumption, as between themselves and all others not claiming as innocent purchasers, will-be that the property so purchased was intended for the wife, and not for the husband nor the community.

A party will not be permitted, under the color or guise of a judicial sale, to conceal and withdraw his property from the reach of his creditors.

Where a judgment debtor, with such fraudulent intent, procures an agent to bid in property at a sheriff's sale, in trust for himself or a member of his family, such purchase is void as to his creditors and purchasers; and should the agent at such sale take the title in his own name, a court of equity will not enforce such a trust.

The interpretation which such a transaction should receive, depends upon the object and purpose with which it is effectuated by the parties, and is therefore a question of fact for the determination of the jury.

A debtor who is in solvent circumstances may unquestionably purchase property sold under execution issued on a judgment against him, if he do so openly and publicly.

The fact that the purchase was made through an agent in trust for the judgment debtor, or for a member of his family, would not of itself indicate a fraudulent intent.

But where it is shown that there is an outstanding and unsatisfied judgment against such debtor; that he has furnished his agent with the funds to make the purchase; that the trust is for one whom he can not prefer to his creditors; that the purchase was made in pursuance of a secret arrangement between the debtor and his agent; and that on the day of sale at the instance of the debtor, his agent forbid the sale and announced publicly that the property belonged to the wife of the debtor:—*Held*, that these facts raised the presumption of a fraudulent intention, and that it devolves upon those who assert the fairness and good faith of the transaction to present proof to dispel such presumption.

APPEAL from Liberty.   Tried below before the Hon. James M. Maxcy.

Adelaide Boquet, the appellee, instituted proceedings in the District Court of Liberty county against her husband, Alphonse Boquet, and Elizabeth Waring, administratrix of F. G. Waring.

The material averments were, that she was the wife of the said Alphonse; that she was the owner in good faith and for a valuable consideration, in her own separate right, of two tracts of land adjoining each other, containing in the aggregate nine hundred and seven acres, which is described by metes and bounds, and upon which petitioner and her husband resided and had their homestead; that one of said tracts, containing five hundred and fifty-two acres, was conveyed by deed to Anonciade Boquet, the daughter of petitioner, by Elizar Winfree, on the 13th of April, 1849; that the other tract was conveyed by deed to Anonciade on the 11th of September, 1850. That petitioner furnished the said Anonciade with the money to pay for said tracts, and that they were paid for by Anonciade with the money so furnished; that in consideration of the money so furnished, the said Anonciade, who was then a single woman, did, on the 9th of November, 1850, execute to petitioner her note for five thousand dollars, and to secure the same did execute to petitioner a mortgage on said tracts and some personal property; that after the execution of the note and mortgage, Anonciade intermarried with W. R. Swinney; that Anonciade, after the birth of a child, died; that after her death the child died, at which time the note was due and unpaid. That W. R. Swinney, surviving husband of Anonciade, agreed to settle the note by conveying to petitioner all the property embraced in the mortgage; that petitioner entrusted this matter to her husband, and gave him the note for the purpose of making the settlement; but that her husband, without her knowledge or consent, and in fraud of her rights, took the conveyance in his own name; that a part of the property thus conveyed to him by Swinney was the two tracts of land; that the note, which was the separate property of petitioner, was the sole consideration of the conveyance made by Swinney to her husband.

An execution against Alphonse Boquet was levied upon an undivided seven hundred acres of said nine hundred acres, as the property of Alphonse, to satisfy a debt against him; that the

same was sold under said levy by the sheriff of Liberty county on the 5th of February, 1856; that on the day of the sale petitioner instructed her agent and attorney, J. D. Lum, to forbid the sale and to state that the same belonged to her; that she further instructed him, that if the said land did not go too *high* to bid it off for her; that her agent then got F. G. Waring to bid at the sale for her, and the land was knocked off to him for twenty-five dollars, petitioner furnishing the purchase money; that the sheriff made a deed to Waring for said seven hundred acres; that Waring died in July, 1856; that Elizabeth Waring administered upon said Waring's estate, and at the April Term, 1858, of the probate court of Liberty county, she obtained an order to sell said land as the property of her intestate; that the same was advertised for sale on the first Tuesday in July next. Petitioner prays for process against the defendants, and that the deed from W. R. Swinney to Alphonse Boquet be decreed to inure to petitioner's benefit; that said Alphonse Boquet be decreed to hold said land in trust for petitioner, and that the title thereto be vested in the petitioner; that the said sheriff's deed be set aside and annulled; that she be quieted in her title.

The defendant, Elizabeth Waring, administratrix of F. G. Waring, filed a general demurrer and a general denial.

The answer of Alphonse Boquet admitted " that the consideration as passed to said Swinney for the conveyance made by him for the land in question among other property, was a five thousand dollar note made by Anonciade Boquet, afterwards Anonciade Swinney." He also admitted that the note was the sole and separate property of Adelaide Boquet, the plaintiff; but he averred that the twenty-five dollars "furnished to Fielder G. Waring," was " furnished" by him, Alphonse, and was money acquired during his marriage with Adelaide. He prayed that " if equity and good conscience require it, he consents that the deed from Swinney to him be canceled and that the title be vested in the plaintiff; that if that cannot be done, then he prayed that the sheriff's deed to F. G. Waring be canceled and that the title be vested in the community estate of himself and Adelaide."

P. K. Smith was made defendant, and claimed an undivided

seven hundred acres of the land under a sale made by the administratrix of F. G. Waring, under an order of the probate court. He charged the execution of the note and mortgage, and the setting up title by Adelaide were made in pursuance of a fraudulent combination between Adelaide and Alphonse Boquet to hinder and delay his creditors in the collection of their debts against him.

From the statement of facts, it appears that Alphonse and Adelaide Boquet were married in Louisiana in 1835; that she owned, as separate property, land, cattle and negroes, worth ten or twelve thousand dollars; that they lived in Louisiana until the year 1846, or 1847, when they moved to Texas; that Alphonse owned no property in his own right while he lived in Louisiana; that when they came to Texas they brought with them two negroes, which Adelaide owned as her separate property; that the deed from W. R. Swinney to Alphonse was read in evidence, by which he, in 1851, conveyed, in consideration of five thousand dollars, to Alphonse, the land in controversy; also the mortgage from Anonciade, substantially as stated in the petition; also a deed from the sheriff of Liberty county to an undivided seven hundred acres, part of the tracts mentioned in plaintiff's petition, levied on and sold as part of the property of Alphonse Boquet, by virtue of an execution issued upon a judgment in favor of W. R. Swinney against Alphonse Boquet, rendered in the District Court of Liberty county, on the 28th of May, 1855. This deed was executed 7th February, 1856.

It was in proof that Anonciade was the daughter of Adelaide and Alphonse Boquet, and that she had acknowledged the execution of the mortgage stated in the petition. W. R. Swinney, her husband, testified that the consideration of the conveyance made by him to Alphonse Boquet, was the five thousand dollar note mentioned in the mortgage; that he was the surviving husband of Anonciade; that Anonciade died, leaving one child; that the child died, leaving him its sole heir; that his wife and child died before the execution of the deed to Alphonse; that he was present at the sheriff's sale; that he asked Waring, for whom he was bidding; that Waring replied for himself; that the land was knocked off to Waring.

Smith v. Boquet.

Jesse D. Lum testified that he was the attorney of Alphonse Boquet; that on the day of the execution sale, Alphonse instructed him to attend and forbid the sale for Adelaide, which he did; that witness spoke to Waring to bid off the land, and it was knocked off to him for twenty-five dollars; that Waring afterwards told witness that he would execute a deed to Adelaide when the sheriff should make a deed to him; that Alphonse gave to witness the money, saying that Adelaide had sent it to witness by him; that witness handed the money to Waring to pay for the land; that witness had no conference nor correspondence with Adelaide about the matter, except through her husband; that afterwards he asked Waring to make a conveyance of the land to Adelaide, which he agreed to do; but Waring died soon after without making it; that witness was the attorney of Alphonse in the suit between him and Swinney, in which the judgment was obtained for the satisfaction of which the execution sale was made; that witness was present when Smith purchased the land at probate sale; that he, in behalf of Adelaide, forbid the sale, stating, publicly, that it belonged to her. Other witnesses testified that Waring had stated to them that he bought the land at the execution sale for Adelaide. P. K. Smith being introduced by plaintiff, stated that when he bought the land at probate sale, that he heard Lum say that he was authorized to forbid the sale for Adelaide. It was proved that in the District Court of Liberty county, W. R. Swinney recovered a judgment, on the 28th of May, 1855, against Alphonse Boquet for $350 50 and costs of suit; that the execution issued thereon was levied on the land in controversy on the 7th January, 1856, and sold on the first Tuesday in February, 1856; that the judgment was not paid until a few months before the trial in 1859. There were, also, read in evidence the proceedings had on the application of the administratrix of F. G. Waring for the sale of the land in controversy, which showed the application; the decree of sale; the return of sale; and the confirmation thereof, all made during the year 1858. The deed from the administratrix to P. K. Smith, executed 17th September, 1858, was also read.

The defendant Smith asks the court to instruct the jury as fol-

lows, to-wit: "If the jury believe from the evidence that the purchase made by Waring at sheriff's sale, was made with the intent to hinder and delay the just creditors of Alphonse Boquet, and that he paid therefor either the community funds of himself and wife, or the individual funds of his own, upon a secret understanding that Waring should afterwards reconvey the property to his wife, and that he took a conveyance of the land in his own name, it would invest in Waring a title that neither Alphonse Boquet nor his wife could avoid, if they were cognizant of such frauds, and if you so believe, you will find for defendant Smith." The court refused to give the instruction.

There was a verdict for plaintiff, and a judgment rendered thereon, vesting the title in the plaintiff. From which judgment P. K. Smith appealed.

*C. L. Cleveland*, for the appellant.

*E. B. Puckett*, for the appellee.

MOORE, J.—The presumption in favor of the community, resulting from a deed made to either husband or wife, may, as between themselves and those claiming under them with notice, be rebutted by proof that the purchase was with the separate funds of either party. Aside, however, from the admissions in the answer of Alphonse Boquet, the husband of appellee, which, of course, cannot affect the appellant Smith, it cannot be said that the evidence established the fact that the note, in consideration of which the land was conveyed by Swinney to Alphonse Boquet, was the separate property of the appellee. His answer, nevertheless, is sufficient as between the appellee and himself to establish his equitable right, and if a trust attached to the land in the hands of the appellant, which could be enforced in favor of Alphonse Boquet, he cannot complain that the trust is passed through Alphonse directly to the appellee. It is also an admitted principle, that a husband may make a gift or grant of the community, or his separate property to his wife, without the intervention of trustees, by a conveyance directly to her. (Story v. Mar-

shall, 24 Tex., 305.) And if he purchase with his separate property or community funds, and take the title in the name of the wife, the presumption, as between themselves and all others not claiming as innocent purchasers, will be that the property was intended for her, and not for himself or the community. (Higgins v. Johnson, 20 Tex., 389.) It follows, as a deduction from this doctrine, Alphonse Boquet having stated when he furnished the money for the purchase of the land at the sheriff's sale, that it was the money of the appellee, and that it was furnished for the purpose of buying the land for her, if the purchaser at the sale held the land upon a trust which was binding upon him, it enured to the benefit of the appellee, and the appellant, having purchased with notice, cannot repudiate it.

There can scarcely be a doubt, from the testimony, that the purchaser at the sheriff's sale purchased as the agent, and at the request of the attorney, who was employed to represent and protect the appellee's claim to the land, and to have it purchased in for her, and paid for it with the money furnished on her account for the purpose. He subsequently often admitted that he had purchased and held in trust for her; and would, no doubt, have conveyed the land to her, but for his untimely death. The only question, therefore, with reference to the transaction, is whether the trust was such an one as the law permits, or the courts can enforce. The presumption, as we have said, in favor of third parties without notice, arising upon the deed from Swinney to Alphonse Boquet, was that the land formed a part of the community property of himself and the appellee, and in favor of creditors it must be held subject to his debts. If, then, the arrangement for its purchase at the sheriff sale, and subsequent transfer to the appellee, was with the malicious or guileful intent of defrauding creditors, the trust is, unquestionably, void.

Obviously, a party will not be permitted, under the color and guise of a judicial sale, to conceal and withdraw his property from the reach of his creditors. Such a transaction is as justly forbidden as a direct and immediate fraudulent conveyance. And while, like fraudulent conveyances directly between parties, it is void as to creditors and purchasers, the courts will not lend their aid in

33*

effectuating the secret trust with which it is connected. The interpretation which such a transaction shall receive, depends upon the object and purpose with which it is effectuated by the parties. It is necessarily, therefore, a question of fact for the determination of the jury. The only difficulty in properly applying the legal principles, by which the present case should be disposed of in this court, is the meagreness with which the facts bearing upon it are presented in the record.

A debtor may, unquestionably, purchase, if he does so openly and publicly, at his own execution sale. And when he is abundantly solvent, we do not perceive that his doing so privately, through an agent in trust for himself, or a member of his family, would indicate a fraudulent intent. Circumstances may be readily imagined when this might be done without the slightest improper or fraudulent design. On the other hand, it is very apparent that the immediate and evident effect of the purchase of his property, if his debt remains unsatisfied, with funds furnished by the debtor, by an agent in secret trust for him, or some member of his family, is to withdraw the property from the view of the creditor, and to hinder, delay, or defraud him in the collection of his debt. This apparent intention may, unquestionably, be dispelled by the facts. But when it is shown that there is an outstanding and unsatisfied judgment, that the funds for the purchase are provided by the debtor, and that the trust is for one whom he could not prefer to creditors, and color and strength is given to these badges of fraudulent intent by the fact of the secrecy of the arrangement, to say nothing of the additional circumstance that the sale is forbidden, and an adverse title to the property, calculated to deter purchasers, is set up by the direction of the debtor, unquestionably it must be said that it devolves upon those who assert the fairness and good faith of the transaction, to present some proof calculated to dispel the presumption of fraudulent intent, otherwise legitimately to be deduced from them. Proof of the value of the land at the time of the sale, and the pecuniary condition of the debtor, would have thrown much additional light on the transaction. But we are of the opinion that the facts, as presented to

the jury, tend to prove fraud, and that the court below erred in refusing to give the charges upon this point in the case asked by the appellant.

And for such error, the judgment is reversed and the cause remanded.

Reversed and remanded.