S. AND J. H. FRENCH ET AL. v. H. D. STRUMBERG ET AL.

1. DEPOSITIONS—PRACTICE.—The exclusion by the court below of the second deposition of a witness, cannot constitute ground for a reversal, when, from an inspection of the excluded testimony, it appears that the answers are not responsive to the interrogatories, or are in regard to immaterial matters.

2. EVIDENCE—MARRIED WOMAN.—In a suit by the heir of the mother to recover lands from the vendee of the father, in which it was claimed that the community interest of the mother had descended, the defendant offered in evidence a written acknowledgment of the heir, joined by her husband, setting forth a donation and transfer from the father to her of certain other lands, valued at $5,760.75, as an advance to her as an heir of his estate, and granting in consideration thereof "this acquittance and release to the estate of her said father to the extent of said $5,760.75": Held—

1. The evidence was properly admitted. It being shown that the father had sold by warranty deed the lands sued for, and which were claimed as having belonged to the mother, the testimony was relevant as tending to show that it was an advancement to plaintiff for which she could be called to account.

2. The fact that the plaintiff had not been examined privily and apart from her husband, when acknowledging the instrument, was immaterial, since the statute relates only to a "deed or other writing purporting to be a conveyance," and not to an acknowledgment like the one being considered.

3. DEED—NOTICE—COMMUNITY PROPERTY—PRESUMPTION.—A deed expressing a valuable consideration which conveys land to a married woman, imposes no obligation on a purchaser from her husband to inquire whether there were equities between the husband and wife with regard to the property, and there seems to be no reason why

the same principle should not apply to such sales made after her death.

4. CONSTITUTIONAL LAW—STATUTE OF LIMITATIONS—CONSTRUCTION OF STATUTES.—Section 14 of article 12 of the Constitution of 1869 did not change the common-law rule of construction of statutes of limitation. It simply extended the time within which, under previous statutes, married women, infants, and insane persons had the right to sue.

5. LIMITATION—MARRIED WOMEN.—A married woman could not, under section 14 of article 12 of the Constitution of 1869, tack the disability of coverture to that of infancy. If she was under disability, so that the statute had not commenced to run prior to the adoption of the Constitution of 1869, she would have had full seven years, after the removal of disability, had the Constitution remained in force, within which to sue. If the statute had began to run prior, the time during which it had run should be computed as part of the seven years.

6. FACT CASES.—See opinion for an instrument not acknowledged, held to be a release of a cause of action by an heir, who was a married woman.

APPEAL from Bexar. Tried below before the Hon. George H. Noonan.

Action of trespass to try title, brought by S. and J. H. French *et al.*, plaintiffs below, to recover from a number of defendants land in the city of San Antonio, containing several acres subdivided into lots.

The defendants pleaded "not guilty," and further answered that the land described in plaintiffs' petition was, in the year 1848 or 1849, divided into town lots; that they were the owners respectively of the lots marked with their names, and denied that plaintiffs, or any of them, had any right, title, or claim to any of said lots; and that if said plaintiffs ever had any right, title, or claim to the lots, such right, title, or claim had long since passed out of them and become vested in defendants.

They further answered that they and those under whom they claimed had been, and were, actual settlers upon the lots respectively claimed by them; that they were citizens of this State, and that they and those under whom they claimed had held uninterrupted, continuous, peaceable, adverse possession

of said lots under color of title, duly proven and recorded in Bexar county, for more than five years after recording their respective color of title, and that they had held possession for more than two, and altogether more than five, years after the plaintiffs, and each of them, arrived at maturity, or were married.

Defendants further pleaded the statutes of limitation of five and ten years, and also alleged that they and those under whom they claimed had had continuous, uninterrupted, peaceable, adverse possession, cultivation, use, enjoyment of the lots respectively claimed by them for more than twenty years prior to the institution of the suit, and that the claim now made by plaintiffs was a stale demand; that they derived title through and under Enoch Jones, deceased; that the land in controversy was the community property of said Jones and his deceased wife, Olive Ann Jones; that Jones conveyed the same, prior to the subdivision, to J. J. Giddings, also deceased; that Jones contracted to sell or exchange the property with Giddings prior to the death of his wife; that the property in controversy was exchanged by Enoch Jones for other lands of far greater value; that the plaintiffs are the heirs of said Jones and his deceased wife, and that they derived the benefit of greater value in and through the estate of Enoch Jones, deceased.

Defendants further alleged that plaintiffs had been fully paid for any interest which they may have had in the land in controversy; that in conveying the land in controversy to Giddings, Jones warranted the title thereto, and that plaintiffs had inherited from Jones, and had been paid by him, by way of advancement and by and from his estate, much more than the value of their entire interest in the community estate of their mother, including the land sued for, and that plaintiffs could not recover because of their liability upon said warranty, as well as by reason of the payments made to them.

Defendants also suggested possession in good faith, permanent and valuable improvements, setting forth the value of the improvements of each lot.

Charles Webb, who was one of the original plaintiffs in the suit, dismissed the same as to himself.

The appellants filed interrogatories to Griffith H. Jones, which were crossed by the appellees. A commission was sued out, and the direct and cross interrogatories were answered by the witness and returned to the district clerk. When they reached this officer the seal was broken and the deposition open. The appellees filed no objections to this deposition, but afterwards the appellants sued out a new commission, under the same direct and cross interrogatories, without further notice to the appellees, and had a second set of depositions taken May 2, 1877, which were duly returned.

On the trial the appellants offered to read in evidence to the court this second deposition of Jones instead of the first, to the reading of which the appellees objected, because the appellants had previously taken another deposition of the same witness on that same set of interrogatories, which first set were then on file and had never been objected to, though received by the clerk with the seal broken and the deposition open. They also objected to the reading of the second deposition, because no second notice of the taking of the same had been given either to appellees or to their attorneys.

The court sustained these objections and refused to allow the second deposition to be read, and then the appellants read without objection the first deposition taken.

Both of the depositions were in relation to the main issues in the case, and were taken to prove the heirship of the appellants, the death of their ancestor, and the facts and circumstances under which a deed for the land in suit, dated May 5, 1846, from Benigno Coy to Olive Ann Jones, was executed, this being the deed under which appellants claim the land as the foundation of their title. The witness in both depositions said: "I do not know who she purchased it from. I do not know how it was paid for."

The two depositions of Jones were literally the same, with

the exception that in the first one, (the one read in evidence,) the witness answered the following question thus:

"Int. 2. If you say you know its object, [of this suit,] please state in general terms its object; and if, in answer to this interrogatory, you say that the object is to recover certain real estate in or adjoining the city of San Antonio, please say what quantity of real estate is there involved in the suit, and describe its locality, and by whom was it claimed when you first knew it; and if you say it was ever laid out in town lots, by whom was it so laid out, and state your means of information?

"Ans. It is property lying, I think, between the Old Ditch and the Alamo. I do not know exactly the amount of land. This is the property my brother, Enoch Jones, traded to Giddings. When I first knew the property, it was claimed by Mrs. Olive Ann Jones. It was laid out in town lots after Giddings traded for it, and, if I am not mistaken, Giddings told me himself. I was living at the Cibolo at that time, and my brother came out to see me and told me that he made a good trade, and I asked him what it was, and he told me that he traded off that lot of land near the Alamo, and I told him, 'Old gentleman, you had no right to trade that off; that property belonged to Olive Ann Jones, your wife.'"

In the second deposition, which was excluded, he answered the same interrogatory as he before answered it, with the following addition to his former answer:

"I remember when the property in question was bought, but do not know anything more about the particulars than this: The day that my brother, Enoch Jones, purchased the property, he came home and said: 'Olive Ann, I have bought a piece of land over about the Alamo; it is for you.' I inferred at the time that it was intended as her special property."

The defendants, in their pleadings, set up, among other defenses, that the appellants, who were admitted to be the right heirs of Mrs. Olive Ann Jones, and Mrs. Adams and Mrs. Washington, but not Mrs. French, who were also admitted to be the heirs of Enoch Jones, the husband of said Olive Ann

Jones, had inherited sufficient property from Enoch Jones, and had received advances and executed releases sufficient to estop them from setting up any claim in right of their deceased mother.

In support of these and other defenses the appellees offered in evidence the following instrument:

"Be it remembered, that on this, the 24th day of August, 1860, I, Olive Ann Washington, * * * have received, by donation and transfer, from my father, Enoch Jones, two certain tracts or parcels of land described as follows, to wit: Survey No. 28, in section 6, in the name of H. Bissell, assignee of Juana Francisca Bustillos, and containing 4,605 acres, or one league and labor. Also a certain tract or parcel of land, survey No. 172, in section 3, containing 2,214 acres, or one half-league, in the names of John W. Smith and Enoch Jones, as assignees of Maria de la lus Guerra. And whereas said lands have been transferred to me by my father, the said Enoch Jones, as an advance to me as an heir of his estate; and whereas the said lands have been estimated in the aggregate at the sum of $5,760.75: Now, therefore, I hereby grant this acquittance and release to the estate of my said father, to the extent of the sum above named, to wit, in the sum of $5,760.75. In witness whereof, the said Olive Ann Washington and her husband, T. A. Washington, have hereunto signed their names the day and year above written, August 24, 1860.

(Signed)      T. A. WASHINGTON.

(Signed)      OLIVE ANN WASHINGTON.

Witnesses:

JAS. H. FRENCH.

SALLIE W. FRENCH."

Judgment for defendants, and plaintiffs appealed.

*Hancock, West & North, H. P. Brewster,* and *Simpson & James,* for appellants.

I. The court erred in not permitting the plaintiffs to read in

evidence the second depositions of the witness Griffith H. Jones. (Ballard v. Perry, 28 Tex., 365; Cornett v. Williams, 20 Wall., 226.)

II. The court erred in allowing the instrument signed by Mrs. Olive Ann Washington and her husband to be read in evidence over the objections of the plaintiffs.

III. The court erred under the facts and law of the case in not rendering a judgment for the plaintiffs.

IV. The court erred in overruling plaintiffs' motion for new trial.

V. Under the facts and circumstances of the case in evidence, the deed from Coy to Olive Ann Jones, dated May 5, 1846, to the land in suit, evidenced a gift either out of his separate or community funds of the property from her husband, Enoch Jones, to said Olive Ann, his wife, and made it her separate property, and, as such, on her death it descended to her heirs, and they are not estopped under the facts of this case from recovering this land as the heirs of their mother.

In the pleadings, the appellants claimed the ownership of this land, and the appellees set up that whether appellants claimed it as the heirs of Olive Ann Jones or of Enoch Jones, in either event they were not entitled to it.

The substance of the evidence adduced by the appellants for the purpose of showing that the land in suit was a gift from Enoch Jones to his wife, Olive Ann Jones, was as follows:

Olive Ann Jones, prior to November, 1838, was the widow of one Webb, by whom she had two children, one named Charles Webb, as to whom this suit was dismissed, and the other Sarah Webb, now Sarah French, and one of the appellants.

On November 20, 1838, Olive Ann Webb married Enoch Jones, in Detroit, Michigan, and they immediately moved to Texas, and settled in San Antonio in 1845, and there lived as man and wife until her death.

From 1845 to 1850, Enoch Jones was solvent, and on May

5, 1845, Benigno Santos Coy, who had a good title from the government to the land in suit, conveyed it by a warranty deed to Mrs. Olive Ann Jones, in consideration of $400. This deed was duly recorded.

The following extract from Enoch Jones' private ledger was in evidence:

### JOHN SANTOS COY.

| 1846. May 4 1847. Feb. | Merchandise. " | 142 188 | 330 65 400 | 72 28 00 | Lands in Texas. | 188 | 400 400 | 00 00 |
|---|---|---|---|---|---|---|---|---|

The witness Uhbrich stated that "the above account is partly in the handwriting of Enoch Jones; the item on the credit side of the account, in the words 'lands in Texas,' is in his handwriting; the balance of the account is in a handwriting I don't know."

The witness Antonio Manchaca stated that he knew Benigno Santos Coy and Juan Santos Coy. They were brothers. The lots in suit were sold by Juan Santos Coy to Enoch Jones. Juan made the sale and received the consideration, and Benigno made the deed. The price was paid in goods from Enoch Jones' store.

There was evidence showing that Sam S. Smith, the county clerk of Bexar county, had held that office for many years; that he had examined the county records, and that there was no other deed on record to Olive Ann Jones than the one for the land in suit. So far as his knowledge extended, Enoch Jones took deeds in his own name in the purchase of lands. Jones lived in San Antonio with his wife, Olive, but a short time before her death. The greater portion of the lands Jones had came to him from the Bissell estate. Jones acquired but few lands during the life-time of his wife, Olive Ann, who died in July or August, 1847. Enoch Jones came to San Antonio

in 1845. From the time of his arrival until the death of Olive Ann, he only acquired the property in suit and an adjoining lot, except what he got from Bissell's estate. In 1846, Enoch Jones had a small store of general merchandise in San Antonio, with a small stock of goods.

It was admitted that the appellants, Olive Ann Washington and Flora K. Adams, were daughters of Olive Ann Jones by her last husband, Enoch.

Witness Griffith Jones states that the land in suit was always known as Mrs. Olive Ann Jones'; he frequently heard Enoch Jones say it was his wife's. About the years 1846, 1847, and 1848, the property in suit was known as the property of Mrs. Olive Ann Jones. Witness also heard his brother say, on one occasion, to his wife, Olive Ann, that the piece of property in suit would be of considerable value to her some day. The property was always claimed and owned to be Mrs. Olive Ann Jones'.

When he first knew the land in suit, Olive Ann Jones was the owner of it, and he never knew of his brother Enoch owning or claiming it. He always said it was his wife's. Enoch Jones was solvent from 1846 to 1850, and was solvent when his wife, Olive Ann, died, and did not then owe one cent.

After the month of August, or summer of 1847, Enoch Jones conveyed the land in suit to J. J. Giddings, and the latter had it laid out in town lots.

It was admitted that the defendants had bought from J. J. Giddings, since 1849 and 1850.

It was admitted that the daughters of Mrs. Olive Ann Jones (Sarah, Olive Ann, and Flora) were the appellants, and were lawfully married to their husbands, who are joined with them in this suit.

An instrument bearing date August 31, 1865, and signed by the appellant Flora K., was in evidence.*

There was also offered in evidence an instrument dated

---

\* *A statement of this paper will be found in the opinion.*

August 23, 1860, signed by Olive Ann Washington and her husband, which, in consideration of $1,000 paid to said Olive Ann Washington by her father, Enoch Jones, released to him all her right and title to her deceased mother's estate so far as it may have been acquired during the coverture of her deceased mother with said Enoch Jones, by virtue of any community or common property existing between them at the time of her death, and binding herself, heirs, and representatives to never set up or pretend any title thereto.

There was also read a release from Olive Ann Washington and her husband to Enoch Jones, dated August 24, 1860, releasing certain interests for a valuable consideration.*

There was also in evidence a bill of sale from J. H. French to his wife Sarah for some negroes and cattle, dated January 12, 1859, in consideration of $1,300 paid by Enoch Jones to Mrs. French.

There was also in evidence a receipt, dated May 15, 1837, given by Hezekia Bissell to Enoch Jones for $5,000, to be invested by Bissell in Texas lands, for the benefit of Enoch Jones, on certain conditions therein set out.

The fourth clause of Enoch Jones' will, which was in evidence, was as follows: †

The consideration of the trade between J. J. Giddings and Enoch Jones was land certificates.

It was admitted that Enoch Jones died in 1863, and that the defendants held by deeds under J. J. Giddings and purchased after the years 1849 and 1850, and went into possession and had made valuable and permanent improvements, and remained in possession up to the present time, and that their deeds from J. J. Giddings down are duly recorded.    Enoch Jones conveyed the property by warranty deed, duly recorded February 6, 1849, to J. J. Giddings.    (Kendrick *v.* Taylor, 27 Tex., 698; Gamble *v.* Dabney, 20 Tex., 69; Higgins *v.* John-

---

* This instrument will be found set out in the statement of the case.
† This will be found in the opinion.

son, 20 Tex., 389; Smith v. Strahan, 16 Tex., 314; Dunham v. Chatham, 21 Tex., 244; Smith v. Boquet, 27 Tex., 507; Story v. Marshall, 24 Tex., 307; Mitchell v. Marr, 26 Tex., 329; Parks v. Willard, 1 Tex., 350; Edrington v. Mayfield, 5 Tex., 363; Claiborne v. Tanner, 18 Tex., 77; Barziza v. Graves, 25 Tex., 322; McAfee v. Robertson, 43 Tex., 591.)

The evidence showed that the property in. suit, if not the separate property of Olive Ann Jones, was at least the community property of Enoch and Olive Ann Jones, and, as such, there being no debts, one-half of it descended at her death to the appellants as the heirs of said Olive Ann, and that they were not in any manner estopped from claiming the same. (Yancy v. Batte, 48 Tex., 46, and cases cited; Johnson v. Harrison, 48 Tex., 257; Veramendi v. Hutchins, 48 Tex., 550; Arnold v. Cauble, 49 Tex., 527.)

VI. In any event the appellant Sarah French, as one of the heirs of her mother, Olive Ann Jones, was entitled to recover her interest in the land in suit, whether it was the separate property of her mother, Olive Ann, or the community property of her said mother and of her step-father, Enoch Jones.

VII. If the appellants are entitled to recover the land in suit either as the separate or community property of their deceased mother, Olive Ann, then under the facts of this case none of the statutes of limitations pleaded by the appellees will bar this suit.

This suit was filed April 1, 1874. The appellees pleaded the statutes of limitations of three, five, and ten years, and the appellants replied coverture, &c.

Olive Ann Jones acquired the land in suit on May 5, 1846, and she died in the summer of 1847.

After the death of Olive Ann Jones, it appears from the evidence that Enoch Jones, the husband of Olive Ann, conveyed the land in suit to J. J. Giddings, and that in 1849 or 1850 the latter executed deeds to the appellees for the land, and that they went into possession of it, and have held continuously under such title ever since, and have regularly paid

all the taxes due on the lots, and have made permanent, valuable, and useful improvements on them, and that their deeds from Giddings were all duly recorded.

It was admitted that the appellants Sarah, Olive Ann, and Flora K. were the children of Mrs. Olive Ann Jones; Sarah being a daughter by her first husband, Webb, and Flora and Olive Ann being her daughters by her second husband, Jones.

Sarah was born October 6, 1836, and married the appellant French October 15, 1856.

Olive Ann was born September 8, 1839, and married the appellant Washington March 8, 1860.

Flora K. was born August 21, 1844, and married the appellant Adams April 17, 1866, and came of age in August, 1865. (Const. of 1869, art. 12, secs. 14, 43; Const. of 1876, art. 16, sec. 18; Bender *v.* Crawford, 33 Tex., 745; Word *v.* Wilder, 42 Tex., 396; DeCordova *v.* Galveston, 4 Tex., 473.)

*Waelder & Upson,* for appellees.

I. There being no objection filed or made to the first deposition, the second was not admissible in evidence, and was therefore properly excluded.

In taking depositions of witnesses, "the statutory rules permitting the same must be fully and fairly complied with."

In the taking of the second deposition of Griffith H. Jones, the commission was sued out without notice to the appellees. (Ballard *v.* Perry, 28 Tex., 365; Garner *v.* Cutler, 28 Tex., 182; Cornett *v.* Williams, 20 Wall., 226.)

The only difference between the two depositions being the addition to the answer to the second interrogatory, and the addition being partly a conversation between Enoch Jones and his wife, and partly an inference of the witness, neither would have been admissible.

If, therefore, it was error to exclude the second deposition, the error was immaterial, and did not change the testimony of the witness, nor could it change the result of the suit.

II. The instrument referred to being in the nature of a

receipt for money received, and not a conveyance of any property of the wife, no separate or other acknowledgment was necessary to its validity.

III. We object more particularly to the conclusions and inferences of the witness Griffith H. Jones, which are, we think, erroneously stated as a part of the evidence; and we ask the court to consider only such of his answers as are admissible, here calling attention to the fact that on the trial in the court below we objected to such of the answers of the witness as relate conversations between him and Enoch Jones, and which are either hearsay or not responsive to the interrogatories, and certainly cannot affect the rights of the appellees. The district judge " decided to hear all the answers read, subject to future discussion and ruling."

There is no evidence in this case to show that the purchase by Enoch Jones of the property in controversy, taking the deed in his wife's name, was intended by him as a gift to his wife, so as to make it her separate property.

There being no evidence that the property in controversy was purchased with the separate means of Enoch Jones, no presumption can arise that it became the property of Mrs. Jones by reason of the purchase in her name.

There being no evidence that Enoch Jones purchased the property with the community funds, and that, at the time of the execution of the deed, he intended it as a gift to his wife, and that, declaring such intention, he ordered the deed in her name, the property did not become the separate property of the wife. (Parker v. Chance, 11 Tex., 513–518; Mitchell v. Marr, 26 Tex., 331; Huston v. Curl, 8 Tex., 242; Love v. Robertson, 7 Tex., 11; Chapman v. Allen, 15 Tex., 283; Higgins v. Johnson, 20 Tex., 393, 395; Smith v. Strahan, 16 Tex., 323; Dunham v. Chatham, 21 Tex., 244; Schmeltz v. Garey, 49 Tex., 61.)

IV. Proof of occasional declarations by Enoch Jones that he had purchased the property in controversy for his wife, would not make it her separate property. Such declarations are " the

weakest and most unsatisfactory kind of evidence." (Coats v. Elliott, 23 Tex., 613; Mitchell v. Marr, 26 Tex., 331; Barziza v. Graves, 25 Tex., 324.)

The property being purchased by Enoch Jones, it was *prima facie* community property; and although the deed was taken in the name of his wife, there is nothing in the facts or circumstances of this case to change the legal presumption.

The evidence establishes the fact that the property was purchased with means belonging to the community. (Parker v. Chance, 11 Tex., 513–518; Bradshaw v. Mayfield, 18 Tex., 26; Cooke v. Bremond, 27 Tex., 459.)

V. The court below having passed upon the question as to the character of the property in controversy, the finding is conclusive, and will not be disturbed by this court. (Jordan v. Brophy, 41 Tex., 284; Dauenhauer v. Devine, 51 Tex., 480.)

VI. The appellant Sarah French is not entitled to recover any part of the land in suit, because of the advances made to her by Enoch Jones.

James H. French, the husband of Sarah, on the 12th day of January, 1859, in consideration of the sum of $1,350 paid to him by Enoch Jones for the benefit of his daughter, the said Sarah French, conveyed to the said Sarah three negroes and seventy-five head of cattle.

VII. In the absence of direct evidence accompanying a gift, the question of advancement must be determined from a consideration of the surrounding facts.

When property is purchased by a parent in the name of his child, it is, *prima facie*, an advancement. (Harrison's Dig., 3290; Sidmouth v. Sidmouth, 2 Beav., 447.)

VIII. The appellant Mrs. Sarah French, at least, is barred by the statute of limitations of five years.

Mrs. French was born October 6, 1836; she was married October 15, 1856; she became of age on her marriage.

All of the defendants, and those under whom they claim, took and held adverse, continuous possession of the lots respectively claimed by them and each of them, using and en-

joying the same, and paying taxes thereon since the dates of their respective deeds from J. J. Giddings to the purchasers of each lot, and under deeds duly registered and in regular chain down from such first purchaser to the several defendants. All of which first deeds were dated in the years 1849 and 1850.

The statute of limitations commenced running against Mrs. French on the 15th of October, 1856, making four years and about four months before the suspension. It ran again from March, 1870, to the institution of this suit, (April 1, 1874,) making altogether eight years and four months. The two periods may be allowed or added together in computing the term of limitation. (Duncan v. Rawls, 16 Tex., 506.)

IX. The judgment should be according to the law as it stands at the time of its rendition, though amended after the institution of the suit.

The judgment in this case was rendered November 30, 1878. (Houston and Texas Central Railroad Co. v. Graves, 50 Tex., 181; Story v. Runkle, 32 Tex., 401; Cooley's Const. Lim., 362.)

X. The deed to the property being made to Mrs. Jones, it was presumably community property.

The purchasers under Enoch Jones (present appellees) were not put upon inquiry as to any equity Mrs. Jones may have had in respect to such property, but they are justified and protected, if they innocently bought it as community property.

The appellees were not chargeable with knowledge of the death of Mrs. Jones at the time of the sale by Jones, or at any time. (Kirk v. Navigation Co., 49 Tex., 215; Cooke v. Bremond, 27 Tex., 457; Goodman v. Simonds, 20 How., 343.)

XI. Enoch Jones was authorized to sell the property in controversy for the purpose of paying community debts, or for the purpose of reimbursing himself for community debts paid by him with his separate funds. (Burleson v. Burleson, 28 Tex., 418; Jones v. Jones, 15 Tex., 143.)

XII. The appellants in this case cannot recover the land in

controversy, because they have received advances from Enoch Jones, their deceased father, to an amount greater than their entire interest in their deceased mother's estate; and they are bound to make good their deceased father's warranty. (Monroe v. Leigh, 15 Tex., 519; Maxwell v. Morgan, 20 Tex., 202, 204; Connor v. Huff, 48 Tex., 364.)

XIII. The appellants having failed to show the amount of community property left by their deceased mother and what has become of it, and having failed to make it appear that there is a necessity of resorting to the land in this suit, they cannot recover. (Burleson v. Burleson, 28 Tex., 419; Opinion of Mr. Justice Moore in Yancy v. Batte, 48 Tex., 64, 65.)

XIV. The claim set up by the appellants in this case is a stale demand. (Carlisle v. Hart, 27 Tex., 353, 354; DeCordova v. Smith, 9 Tex., 129–145; Tinnen v. Mebane, 10 Tex., 246–256; McMasters v. Mills, 30 Tex., 595; 2 Story's Eq. Jur., sec. 1520; 2 Bouv. Law Dic.)

BONNER, ASSOCIATE JUSTICE.—This is an action of trespass to try title, brought by the appellants against the appellees, in the District Court of Bexar county, to recover a large number of lots in the city of San Antonio, near the Alamo.

One of the original plaintiffs, Charles Webb, dismissed the cause as to himself, leaving the same to be prosecuted by the remaining plaintiffs, Sarah French, Flora K. Adams, and Olive Washington, joined by their husbands.

The plaintiffs claimed the lots in controversy by inheritance from their deceased mother, Olive Ann Jones, first, as her separate property; second, as the community property of herself and her husband, Enoch Jones, also deceased, and who was the father of two of the plaintiffs. The property was sold, after the death of Olive Ann Jones, by her surviving husband, Enoch Jones, to J. J. Giddings, for a valuable consideration, by warranty deed, and by Giddings sold to defendants and those under whom they claim.

The defendants demurred, pleaded not guilty, the statutes

of limitations, improvements in good faith, and advancements by Enoch Jones to the plaintiffs, and releases by them to him and to his estate.

The cause was tried by the court, a jury having been waived, and judgment rendered for the defendants.

The first error assigned is, that "the court erred in not permitting the plaintiffs to read in evidence the second deposition of the witness Griffith H. Jones."

In our opinion, this alleged error is not well taken, for the reason that the additional testimony therein contained was not responsive to the interrogatory; that the witness, in the deposition which was read, stated distinctly, as sought to be proven by the plaintiffs, that the land was claimed by Mrs. Olive Ann Jones, and hence the testimony was immaterial; and for the reason that so much of the answer as was based upon the inference of the witness was improper.

The second alleged error is, that "the court erred in allowing the instrument signed by Mrs. Olive Ann Washington and her husband to be read in evidence over the objections of the plaintiffs."

The instrument referred to was "an acknowledgment by Mrs. Washington, joined by her husband, dated August 24, 1860, setting forth a donation and transfer from her father, Enoch Jones, to her, of land valued at $5,760.75, as an advance to her as an heir of his estate, and granting in consideration thereof 'this acquittance and release to the estate of her said father' to the extent of said $5,760.75."

The appellants objected to its introduction because it was irrelevant, and because it was not acknowledged in accordance with law by Mrs. Washington, she being a married woman, and because it did not appear that she had been examined privily and apart from her husband, as required by law.

In view of the fact that Enoch Jones had sold by warranty deed the property claimed by Mrs. Washington as belonging to her mother, we think that the testimony was relevant as tending to prove that this was an advancement to her, and for

which she could equitably be called to account, and that there was no error in its introduction, particularly as the case was submitted to the court without the intervention of a jury, and there was other evidence showing, *prima facie* at least, that she had received other property in satisfaction of her interest in her mother's estate. (Herndon *v.* Casiano, 7 Tex., 322; Gould *v.* West, 32 Tex., 338; Irion *v.* Mills, 41 Tex., 315.)

In response to the second objection, that her privy examination was not taken to the instrument, it is sufficient to say that the statute in terms applies to a "deed or other writing purporting to be a conveyance," and not to such an instrument as the one under consideration.

Under the conclusion to which we have arrived, that Mrs. French's claim is barred by limitation, it is not necessary to consider the third error assigned.

The fourth and fifth alleged errors raise the question whether the lots were the separate property of the deceased mother, Mrs. Jones, or community property, and if either, whether, under the issues and evidence, the court erred in rendering judgment for the defendants.

The land was bought by the husband with community funds, and at his instance the deed was made by the vendor to the wife, Mrs. Jones. Although, as between the husband and the wife and their heirs, this circumstance may be sufficient to show that it was intended by the husband to thereby make it the separate property of the wife, yet a presumption to this effect would not be indulged against subsequent purchasers for value without notice. (Smith *v.* Boquet, 27 Tex., 507.)

It was held in Cooke *v.* Bremond, 27 Tex., 457, (approved in Kirk *v.* Navigation Co., 49 Tex., 215,) that an inspection of a deed for land made to a married woman, which deed expressed on its face a valuable consideration, did not constitute notice that the land was the separate property of the wife; but, on the contrary, it authorized the inference that it was part of the community property of the husband and wife, and, as such, subject to be disposed of by the husband alone. That the

fact that a conveyance expressing a valuable consideration was taken in the name of a married woman, imposed no obligation on a purchaser from her husband to inquire whether there were equities between the husband and wife with regard to the property.

In that case, the sale by the husband was made during the life-time of the wife, but we see no reason why the same principle should not apply to such sales made after her death.

Under the facts and circumstances of the case, and as between the parties to the record, we are of opinion that the land cannot be held to have been the separate property of Mrs. Jones.

The issues, then, are narrowed down to the question, whether the plaintiffs are entitled, in right of their deceased mother, to recover her community interest in the property in controversy.

We are of opinion, that as to the claim of plaintiff Mrs. French, it was barred by the statute of limitation of five years.

The suit was brought April 1, 1875. The land was deeded to Mrs. Jones May 5, 1846. She died in the summer of 1847. The sale was made by the surviving husband to Giddings in 1849, who, in that year and 1850, conveyed to the defendants and those under whom they claim, they going into immediate possession, cultivating, using, and enjoying the same, making valuable improvements, &c. Mrs. French was born October 6, 1836, and was married October 15, 1856, when the statute began to run as to her. From that time until the date of the suspension of the statute, January 28, 1861, (Const. of 1869, art. 12, sec. 43,) was four years three months and thirteen days. The statute again commenced to run March 30, 1870. From that time until the date of the institution of the suit was four years one month and one day, making altogether the time during which the statute was running eight years four months and fourteen days.

By section 14 of article 12 of the Constitution of 1869, it was provided, * * * "and married women, infants, and insane persons shall not be barred of their rights of property by

adverse possession, or law of limitation of less than seven years, from and after the removal of each and all of their respective legal disabilities."

Our view of this provision is, that it did not change the common-law rule of construction of statutes of limitation, but that it simply extended the time within which, under previously-existing statutes, those under disability had the right to sue; that, in a case like the one now before the court, a married woman could not tack the disability of coverture to that of infancy, but that, when the plea of limitation of five years was interposed, had the Constitution not been abrogated, she had seven instead of five years within which to institute suit from the time of her marriage, when the statute first began to run; that if she was under disability, so that the statute had not commenced to run prior to the adoption of the Constitution, had it remained in force, she had full seven years, after its removal, within which to sue, but that if the statute had commenced to run prior, the time during which it had run should be counted as part of the seven years.

Tested by this construction, the claim of Mrs. French was barred by limitation, and need not be further considered.

Under a clause of the will of Enoch Jones in evidence, and a receipt for $1,000 executed by plaintiff Flora K. Adams in accordance therewith, we are of opinion that she thereby released her cause of action.

The clause referred to is as follows:

"I desire $1,000 to be paid to my daughters Olive Ann and Flora K., in full discharge and satisfaction of any interest they may have in their mother's estate held in community with me. * * * But in the event either should institute against my estate a suit for the recovery of such community interest, then it is my will and desire that such child shall receive nothing whatever of my estate."

Her receipt was to the effect that, for and in consideration of $1,000 specie to her paid by the executors of Enoch Jones, she renounced all her right and claim in his estate, which she

may be supposed to have as heir to her mother, Olive Ann, his wife, except her rights as heir at law of said Enoch, or as legatee under his will, and conveying to his executors all her rights in his estate and in all property acquired during the coverture of her mother, except her rights as his legatee or heir; this renunciation to inure to the benefit of all his heirs and legatees, in accordance with the terms of his will, and said $1,000 being in full satisfaction of the special legacy left to her by her father as heir of her mother, Olive Ann.

As to the only remaining plaintiff, Mrs. Washington, in addition to the receipt before mentioned for $5,760.75, there was also in testimony an instrument dated August 23, 1860, signed by her and her husband, which, in consideration of $1,000 paid to her by her father, Enoch Jones, released to him all her right and title to her deceased mother's estate, so far as it may have been acquired during the coverture of her deceased mother with said Enoch Jones, by virtue of any community property existing between them at the time of her death, and binding herself, heirs, and representatives to never set up or pretend any title thereto.

This instrument was at least *prima-facie* evidence of a release of all her interest in her mother's estate; and the court below having found against her, and there being no error apparent of record as to any of the plaintiffs, the judgment is affirmed.

AFFIRMED.

[Opinion delivered October 28, 1879.]