Opinion by
White, P. J.

('Transferred from, Austin. J

§ 409. Mortgagee is protected as a purchaser under our registration laws; rent charge; merger of titles; case stated. Appellant commenced, this suit against appellees as heirs of A. S. Graves, deceased, by procuring a distress *355 warrant for rent due for the years 1882 and 1883. Her petition was filed in proper time in the county court. It alleged that on the 10th day of March, 1875, A. S. Graves and his wife, Bettie Graves, were indebted to Thos. B. Kilgore in the sum of $700, to secure which they gave him a deed of trust on one hundred and forty acres of land, and some personal property. Thos. B. Kilgore died in January, 1878, and plaintiff now owns his claim. Bettie Graves died in June, 1879. On January 15, 1880, A. S. Graves leased said land to plaintiff, Mrs. Kilgore, for five years, in consideration of $700 recited paid. On January 19, 1880, plaintiff leased the same land back to A. S. Graves for five years, for $180 for the first year, and $130 for each succeeding year. No money was in fact paid for said lease, but the lease and release were for the purpose of securing said old indebtedness. By virtue of the terms of the lease from Mrs. Kilgore to Graves, all crops raised upon said land from year to year, and each year for the term of said five years from and after January, 1880, are made subject to a lien and rent charge to secure payment of each and all of said notes. Said notes were to be the first debt paid out of each succeeding crop. The note for each year was due on November 1 of that year. A. S. Graves paid the first two notes, and died on the 20th of December, 1881. Before his death, he, and after his death the defendants, took and held possession of said land by virtue of said lease, and with full knowledge of the same, and defendants appropriated the rent of said land for the years 1882 and 1883, of the value of $220 for each year.
Defendants answered that tho land was the separate property of their mother, Bettie Graves, and was paid for by her separate funds, and was so held and owned by her to the date of her death. That the land was made their homestead from the date of its purchase in 1870; that after the death of Bettie Graves in June, 1879, A. S. Graves and defendants held possession of said land as a homestead until the death of A. S. Graves; that after *356 the death of A. S. Graves, defendants held the land as their own by descent from Bettie Graves, free from any incumbrance made by A. S. Graves. That any lease made by him terminated at his death. That defendants nor their ancestors ever received possession of said land from plaintiff. That at the time the lease was made defendants were minors, residing on the land with their father, and had no guardian. The deed to Mrs. Bettie Graves for the land in question was made part of defendants’ answer, and it recited a consideration of $1,250 paid by her, but did not recite that the money paid was her separate funds.
Plaintiff filed a supplemental petition, and set up that there was no recital in the deed to Bettie Graves showing the land to be her separate property, and that neither plaintiff, nor those from whom she claims, had any knowledge, actual or constructive, that said laud was the separate property of Bettie Graves. That Thos. B. Kilgore took the trust deed, at the time he furnished the money constituting the original indebtedness, on the faith of said property being community property, said debt being a community debt. That plaintiff took said lease to secure said indebtedness, believing said land to be community, releasing other valuable property from said trust deed. Defendants’ demurrer to this supplemental petition was sustained upon two grounds, as stated by the judge, to wit: 1. Because the possession of said land by defendants, as alleged in their answer, was sufficient notice to plaintiff of their right to the land as the separate property of their mother. 2. Because plaintiff taking the lease as set out in her petition, could not make her a purchaser for valuable consideration, to be protected as an innocent purchaser. Plaintiff excepted to this ruling, and, declining to amend, judgment was rendered that she take nothing by her suit, etc.
The first question for consideration is, Do the facts alleged show plaintiff to occupy a position in which she was entitled to claim that she was protected as an inno *357 cent purchaser could have been in like circumstances, against the claim asserted by defendants, and endeavored to be by them substantiated by means of the deed to Bettie Graves, to the effect that the land was the separate property of their mother, and as such their separate property by inheritance, and not liable for community debts ? Her claims for rent, as shown by the transactions between A. S. Graves and herself, amounted to nothing more nor less than the creation by Graves of what is technically denominated a rent charge upon the land to secure an antecedent indebtedness. “A rent charge is where land is charged with rent by deed or will, with power to distrain therefor. .... In such case the land is liable to the disti-ess by virtue of the clause in the deed, and it is because the land is charged with a distress, that it is called a rent charge.” [Wood’s Landlord and Tenant, § 449.] Under the facts shown, the relation of landlord and tenant did not, strictly speaking, subsist between the parties, because, if the land was either the separate property of the wife, or the community of husband and wife, in either case, upon her death, his title would become fixed by law, and whether in effect absolute or limited, such a title would be a legal one, and superior in dignity to any lease he might have acquired.' In other words, any lease he might have as a tenant holding under a third party, might, and perhaps would, become merged in his better title. “A merger occurs when a greater and less estate coincide in the same person, without any other intermediate estate. In such a case, at law, the less estate is annihilated. But in equity, where mergers are not favored, the question as to whether the estates merge, depends upon the intention of the parties, and the circumstance whether justice requires that they should be kept separate.” [Wood’s Landlord and Tenant, § 504.] Evidently, the parties here did not intend or contemplate a merger of • estates. On the contrary, they were clearly endeavoring to avoid such a result. Landlord and tenant relations might not really. *358 subsist, but the intention and effort doubtless was, to engraft a rent charge upon one’s own property, independent of his title. Such a lease, rent or incumbrance, under the circumstances, did not merge in the title ■ already held by him. What was the nature and effect in law of this rent charge ? “At common law, a distress is treated as a mere pledge.” [Id. § 543.] Under our law, such a rent as here shown, would be considered and treated in the light of a mortgage. If a mortgage, then is a mortgagee protected in the same manner as an innocent purchaser, similarly situated, would be ? “Our statutes of registration place a creditor who has acquired a lien upon the property upon the same level as a purchaser. [Ayres v. Dupree, 21 Tex. 593.] And in the case of McKeen v. Stultenfess, 61 Tex. 325, it was held that a creditor who, without notice, tafees a mortgage and has it duly recorded, is a lien creditor within the meaning of the statute.” [Ante, § 294.]
§ 410. Separate property; deed to wife does not malee property separate, unless, etc.; registration of such deed is not notice of separate character of property. Defendants claimed that the land was the separate property of their mother, and that as such the husband could not incumber it with a community debt in derogation of their rights of inheritance from their mother. In support of the claim that it was separate property, they adduce as evidence, and exhibit in their answer, a deed to the land from Brown and wife to Bettie Graves, their mother, reciting a consideration of $1,250 paid by her, but it is nowhere stated in the deed that this $1,250 was the separate money or funds of said Bettie Graves. How far would such a deed have affected an innocent purchaser with notice that the land was the separate property of Bettie Graves? “It has long been settled that property acquired during coverture by purchase or apparent onerous title, whether the conveyance be in the name of the husband or the wife, or both, will be presumed * to be community property, and that as to bona *359 fide purchasers from the husband for a valuable consideration, without notice, this presumption cannot be rebutted by parol evidence that it is the separate property of the wife.” [Cooke v. Bremond, 27 Tex. 457.] It has also been decided that the mere fact that such deed was taken in the name of the wife did not constitute notice that it was her separate property, but, on the contrary, authorized the inference that it was community property, and subject to sale by the husband. [Id. 457; Wallace & Co. v. Campbell, 54 Tex. 87.] The purchaser from the husband of land acquired during marriage, the deed to which is made to the wife, is not thereby put upon inquiry as to any equity she might have in respect to it, if he buys in ignorance of her claim to it as separate property. The rule is otherwise if the recitals in the deed show that the consideration paid was the wife’s separate estate, or that the purchase was designed for her separate benefit. [Kirk v. Navigation Co. 49 Tex. 213.] Viewed in the light of these well settled rules of law, the deed to Bettie Graves would not have been notice ipso facto to an innocent purchaser, or to a mortgagee, that the land was her separate property; nor does it afford such ground for inquiry even, as to her separate rights and equities, as would bring them within the scope of that other well established rule, that “whatever is sufficient to put a party upon inquiry is notice.” [W. & W. Con. Rep. § 662.]
§411. Possession of land; how far notice of title. But it is contended, if the deed is not per se notice, that, taken in connection with the fact of possession of the land by the mother in her life-time, and after her death by these defendants as her heirs, there was notice that it was the separate property of the mother. As a general rule, lawful possession of land is prima facie evidence of, and notice to the world, of the possessor’s right and title. But it is not notice to the extent that it invalidates the title shown by a recorded deed. “A purchaser in good faith may rely upon the real title being where, by *360 the deed, it appears to be; and he or she who wilfully or negligently permits property to stand in the name of another person, at least as apparent owner, cannot be heard to say that such is not true, to the prejudice of a person who, relying upon the apparent ownership, has bought and paid a valuable consideration for the land.” [Parker v. Coop, 60 Tex. 111; citing Cooke v. Bremond, 27 Tex. 459; French v. Strumberg, 52 Tex. 109.] An elementary author states the rule thus: “Where, in addition to the title under which the proprietor occupies the premises, and which either rests in parol or is unrecorded, the record also shows a title under which he would be entitled to possession, in such a case his possession will be referred to his record title in preference to any other, and the purchaser will not be affected with notice of any undisclosed title or interest which the possessor may have.” [Wade on Notice, § 297.] Mr. Pomeroy, in his standard work on Equity Jurisprudence, says: “Whenever a party dealing as purchaser, or incumbrancer, with respect to a parcel of land, is informed or knows, or is in condition which prevents him from denying that he knows, that the premises are in the possession of a third person other than the one with whom he is dealing as owner, he is' thereby put upon an inquiry, and is charged with constructive notice of all the facts concerning the occupant’s right, title and interest ' which he might have ascertained by means of a due inquiry. A legal presumption arises that he possesses all the knowledge which he would have acquired by such an inquiry.” “But,” says the same author, “the decisions may be regarded as agreeing upon the conclusion, which also seems to be in perfect harmony with sound principles, that when a title under which the occupant holds has been put upon record, and his possession is consistent with what thus appears of record, it shall not be a constructive notice of any additional or different title or interest, to a purchaser who has relied upon the record, and has had no actual notice *361 beyond what is thereby disclosed.” [2 Pom. Eq. §§ 615/ 616.] Being then held and bound only by such notice as the recorded deed to Bettie Graves afforded, said deed showed only a community estate, and conveyed to plaintiff no constructive notice of the fact that the property was the separate property of Bettie Graves.
§ 412. Homestead rights do not descend to children; surviving husband may sell or mortgage homestead. But again, defendants claimed that the land was occupied, used and possessed by their father, mother and themselves, during the life-time of both parents, and after the death of their mother, by their father and themselves up to his death, and since that time by defendants; that plaintiff had notice of this fact, and that the property being the homestead, was, and is, exempt from liability for debts of any character; that it is true the husband and wife, in their life-time, might sell it; and true the surviving husband might sell it after the death of the wife, but that he could not incumber it by a lien of any character, to operate after his death; but that such lien, or attempted lien, would be terminated at his death, and the land would descend and pass to them as a homestead, free, and unincumbered by such lien. These propositions ate based upon certain provisions of our constitution, as follows, viz.: “No mortgage, trust deed, or other lien, on the homestead shall ever be valid, except for the purchase money thereof, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead, involving any condition of defeasance, shall be void.” [Const, art. XVI, sec. 50.] Again, “On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the life-time of the surviving husband or *362 wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under order of the proper court having the jurisdiction, to use and occupy the same.” [Id. sec. 52.] In Shannon v. Gray, 59 Tex. 251, it is held that the children have no interest in the homestead as such, by virtue of the homestead right of the deceased parent, and that the husband may sell the homestead after the death of the wife. In Astugueville v. Loustaunau, 61 Tex. 233, it is said, “Taking all of sec. 50, art. XVI, of the constitution into consideration, it would seem, however, that there was no restriction intended to be placed on the owner of property used as a homestead, in inference to his power to sell or incumber it with liens, unless such person have a wife. It imposes a restriction on the power of the husband to sell the homestead only when he is a married man, and in such a case a sale cannot be made without the wife’s consent given in the manner prescribed by law. If, however, the head of a family be an unmarried man, he may sell a homestead which he owns, just as he may sell any other property; and it is ordinarily true, that the owner who has an unrestricted power to sell, may mortgage.” [Citing Brewer v. Wall, 23 Tex. 587; Allison v. Shilling, 21 Tex. 454; Wright v. Hays, 34 Tex. 361.] Neither of the positions assumed by the court as the basis of its action in sustaining defendants’ demurrer to plaintiff’s supplemental petition, and in dismissing the case, are maintainable under the rules of law which we have stated. The petition states a good cause of action, and the demurrer should have been sustained.
November 1, 1884.
Beversed and remanded.